# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRYAN M. DOTSON,

Defendant-Appellant.

---

OPINION AND JUDGMENT ENTRY
Case No. 16 MA 0105.

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 15 CR 613.

BEFORE:
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

JUDGMENT:
Affirmed in Part. Reversed in Part. Remanded.

---

*Atty. Richard Ferrara*, 2077 East Fourth Street, Second Floor, Cleveland, Ohio 44114, for Defendant-Appellant and,
*Atty. Paul Gains*, Mahoning County Prosecutor and *Atty. Ralph M. Rivera,* Office Mahoning County Prosecutor, 21 W. Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee.

Dated:
June 22, 2018

**Donofrio, J.**

{¶1} Defendant-appellant, Bryan Dotson, appeals from a Mahoning County Common Pleas Court judgment convicting him of receiving stolen property in the form of a vehicle and tampering with vehicle identifying numbers, following a jury trial.

{¶2} On May 22, 2014, Ohio State Highway Patrol Trooper Erik Golias initiated a traffic stop of appellant on State Route 46 in Mahoning County, Ohio. Trooper Golias initiated the traffic stop due to appellant's truck not displaying a front-end license plate. Appellant was operating a Dodge Ram pickup truck.

{¶3} Upon approaching appellant's vehicle, Trooper Golias noticed that the truck's steering column had been "peeled," meaning that the plastic around the ignition had been pulled away from the steering column to access the ignition mechanisms. He was then under the suspicion that the truck appellant was operating may have been stolen or tampered with. Upon noticing the peeled steering column, he removed appellant from the truck, conducted a consensual pat-down, and placed appellant in his police cruiser. Trooper Golias then attempted to identify the public vehicle identification number (VIN), which is located on the dashboard, but was unable to do so because there was black spray paint on the windshield which covered the VIN. Trooper Golias also discovered a secondary VIN on the truck inside the door frame that was also covered with black spray paint. Eventually, Trooper Golias was able to scrape away enough of the spray paint on the windshield to ascertain the public VIN. The public VIN indicated that the truck belonged to appellant.

{¶4} There were several other factors that lead to Trooper Golias' suspicion that the truck appellant was operating was stolen, which lead to a continued search. These factors included: a cracked dashboard, missing screws from the dashboard, appellant's apparent level of nervousness, appellant's overtalkative nature, and appellant's explanation that he changed out the dashboard but the newly installed dashboard was damaged. Appellant attempted to explain that he purchased the truck inexpensively and had replaced many components including the interior and the windshield. Trooper Golias contacted Trooper Skaggs, who was a specialist in stolen vehicles, to assist with the investigation.

Case No. 16 MA 105

**{¶5}** Upon Trooper Skaggs' arrival at the scene, he began to investigate the truck. First, he noted that an anonymous tip was reported stating that there was a Dodge Ram pickup truck matching the description of the truck appellant was operating that was possibly a retagged vehicle. Trooper Skaggs also noted that: the door markings identified the truck as a Dodge 1500 series but the chassis was a Dodge 2500 series; the dashboard itself was a different color than the rest of the interior of the truck; and the truck's engine was missing its body tag. Furthermore, Trooper Skaggs noticed that the truck's VIN indicated that the truck contained a 5.9 liter gas engine but the truck had a 5.9 liter turbo Cummins intercooled diesel engine.

**{¶6}** At the conclusion of Trooper Skaggs' inspection, Troopers Golias and Skaggs impounded appellant's truck in order to perform a more thorough investigation. But they decided not to arrest appellant at that time. They gave appellant the option of transporting the truck to the highway patrol post himself or having the troopers call for a tow truck. Appellant opted to drive the truck to the highway patrol post himself. Appellant was then free to leave after he left the truck in the troopers' possession.

**{¶7}** The next day, Trooper Skaggs continued his investigation of the vehicle. He located the secondary concealed VIN on the truck. The secondary VIN did not match the public VIN located on the dashboard. When he ran the secondary VIN through the National Insurance Crime Bureau (NICB) and the National Crime Information Center (NCIC) databases, he discovered that the secondary VIN was for a Dodge 2500 series truck reported as stolen from Cornerstone Motors (Cornerstone) in Columbiana, Ohio. Trooper Skaggs also followed up with the public VIN on the dashboard and discovered the original owner, Amanda Varney. Varney told him that she had sold appellant a maroon Dodge Ram 1500.

**{¶8}** Trooper Skaggs also noted that the truck registered as stolen indicated it had approximately 141,000 miles on it. Appellant's odometer at the time he was stopped by Trooper Golias read 145,213 miles. But the title of the vehicle when Varney sold the truck to appellant indicated that the truck she sold had almost 250,000 miles on it. Trooper Skaggs then concluded that the VIN of the vehicle appellant purchased from Varney was placed on the stolen vehicle from Cornerstone in order to conceal the fact that it was stolen.

Case No. 16 MA 105

{¶9} Appellant was then charged and indicted with one count of receiving stolen property in the form of a vehicle, a fourth-degree felony in violation of R.C. 2913.51(A), and one count of tampering with vehicle identifying numbers, a fifth-degree felony in violation of R.C. 4549.62(A).

{¶10} Appellant filed a motion to suppress seeking to exclude virtually all evidence police obtained in this case. In his supporting memorandum, appellant argued that all evidence should be suppressed due to: a lack of reasonable suspicion to conduct a traffic stop, a lack of reasonable suspicion to continue appellant's detention and the investigation of the truck, and any and all statements made by appellant were obtained prior to appellant being read his *Miranda* rights. At the suppression hearing, Trooper Golias testified that a video tape of appellant's stop and detention existed. But the video had not been produced because it was erased by the Ohio State Highway Patrol.

{¶11} After the suppression hearing, the trial court gave appellant leave to file a motion addressing the missing tape. Appellant filed a motion to dismiss on the basis that the erased video tape contained potentially exculpatory evidence and should have been preserved and disclosed by the prosecution. Appellant requested a hearing with the trial court on his motion to dismiss. The trial court overruled both appellant's motion to suppress and motion to dismiss without further hearing.

{¶12} The matter proceeded to a jury trial. Troopers Golias and Skaggs were the only witnesses. The jury returned guilty verdicts on both counts. The trial court subsequently sentenced appellant to five years of community control, which included six months of incarceration on each count to be served consecutively for a total jail sentence of one year. The court also ordered appellant to pay restitution of $1,000 to Cornerstone and $10,713.38 to Auto Owner's Insurance, Cornerstone's insurance company.

{¶13} Appellant timely filed this appeal on July 15, 2016. He now raises ten assignments of error.

{¶14} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS ALL EVIDENCE, INCLUDING OBSERVATIONS AND CONCLUSIONS, FROM

THE UNCONSTITUTIONAL STOP, SEIZURE, AND SEARCH OF APPELLANT AND HIS VEHICLE.

{¶15} Appellant makes several arguments concerning this assignment of error. First, appellant argues that he was arrested as a result of his original traffic stop and such arrest and subsequent search of the truck was not supported by probable cause. Next, appellant argues that he was unconstitutionally seized when Troopers Golias and Skaggs prolonged his traffic stop. Finally, appellant argues that the seizure of the truck was unconstitutional because it was done so without a warrant or an exception to the warrant requirement.

{¶16} A motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶17} The only witness who testified at the suppression hearing was Trooper Golias. He testified that he initiated the traffic stop for failure to display a front license plate on an Ohio-registered motor vehicle. (Supp. Tr. 14-15, 33, Exhibit 1). This testimony was not contradicted throughout the suppression hearing. As operating a motor vehicle without a front license plate is a violation of R.C. 4503.21, sufficient reasonable suspicion existed for Trooper Golias to stop appellant.

{¶18} Next, appellant argues that he was arrested without probable cause when Trooper Golias immediately removed him from the truck and placed him in the police cruiser. An arrest involves four elements: (1) an intent to arrest; (2) under a real or pretended authority; (3) an actual or constructive seizure or detention of a person; and (4) the intent is understood by the person arrested. *State v. Darrah*, 64 Ohio St.2d 22, 412 N.E.2d 1328 (1980).

{¶19} Appellant points out the following portion of the suppression hearing transcript during Trooper Golias' cross examination:

**Q**     I understand that. I understand that. But that's what was told to you. And at this time, there was a key in the ignition; correct?

**A**     I don't recall, but I believe so.

* * *

**Q**     Okay. Okay. And I notice that the - - so then you opened the door, and you look in the side to see if you see a VIN number; is that what you said?

**A**     No. I said Federal Identification.

**Q**     Federal Identification number. Okay. Now, up to this point you still haven't asked him his name, have you?

**A**     No, I have not.

**Q**     You haven't asked him for any identification, proof of insurance, registration; correct?

**A**     No. Right now I'm worried about a felony of a stolen vehicle.

* * *

**Q**     So just by looking at - - so you don't ask him name, anything about him until later on, nine minutes later by your notes; right?

**A**     I believe that's when I asked him, after I had the scene secured.

**Q**     Okay. And as far as you ordered him out of the car; right?

**A**     Correct.

**Q**     Okay. And where was he placed at that time?

**A**     He was taken to the front of my patrol car.

**Q**     Okay. And he was put in your patrol car?

Case No. 16 MA 105

**A**      Yes, he was.

**Q**      He wasn't free to leave at that time; correct?

**A**      No, he was not.

(Supp. Tr. 35-37).

**{¶20}** According to this passage, Trooper Golias pulled appellant over, noticed a peeled steering column and spray paint on the windshield covering the VIN on the dashboard, and then immediately placed appellant in the front seat of his police cruiser. The state argues that this was not an arrest but an investigatory detention.

**{¶21}** Generally, an investigatory detention is reasonable and, thus, passes constitutional muster when the officer performing the investigatory detention has reasonable and articulable suspicion of criminal activity. *State v. Warner*, 7th Dist. No. 15 CO 0026, 2016-Ohio-4660 ¶ 33 citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). An investigatory detention constitutes a seizure which implicates the Fourth Amendment. *State v. Walker*, 7th Dist. No. 03 MA 0238, 2004-Ohio-5790 ¶ 14 citing *State v. Taylor*, 106 Ohio App. 741, 667 N.E.2d 60 (2d Dist.1995). An investigatory detention is limited in duration and purpose and can only last as long as it takes for a police officer to confirm or dispel his suspicions. *Id.* quoting *Taylor*, 106 Ohio App.3d at 748. The actions of a police officer in asking a person to sit in the police car do not automatically transform an investigatory detention into a formal arrest. *State v. Pickett*, 8th Dist. No. 76295, 2000 WL 1060653 (Aug. 3, 2000).

**{¶22}** This Court has addressed investigatory detentions in *State v. Coleman*, 7th Dist. No. 06 MA 0041, 2007-Ohio-1573. In that case, Coleman was pulled over for speeding and could not produce his license, registration, or proof of insurance. *Id.* at ¶ 5. Coleman was then placed in a police squad car while the officer determined Coleman's identity. *Id.* at ¶ 6. This Court held that the act of relocating a person to a police car did not elevate the traffic stop to the level of an arrest. *Id.* at ¶ 38. This rule has also been adopted by the Ninth District. See *State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995).

**{¶23}** In this case, appellant was lawfully pulled over for failure to display a front license plate on an Ohio registered vehicle. (Supp. Tr. 14-15, 33, Exhibit 1). Upon

arriving at the truck, Trooper Golias noticed that there was paint over the VIN and that the steering column was peeled, which indicated that the truck was stolen. (Supp. Tr. 15-17). Furthermore, appellant made statements concerning the VIN, which indicated to Trooper Golias that appellant knew what he was searching for and where those numbers were located. (Supp. Tr. 19-21). Finally, like the defendant in *Coleman*, appellant did not have his driver's license on him when Trooper Golias initiated the traffic stop. (Supp. Tr. 22). Ultimately, when Trooper Golias relocated appellant to his squad car, this was an investigatory detention and not a warrantless arrest.

**{¶24}** Next, appellant argues that his detention was unreasonably prolonged, which ultimately resulted in an unconstitutional seizure. The scope of a detention must be carefully tailored to its underlying justification and last no longer than is necessary to effectuate the purpose of the stop. *State v. Blackburn*, 115 Ohio App. 678, 685 N.E.2d 1327 (7th Dist.1996). The reasonable and articulable standard applied to a prolonged traffic stop encompasses the totality of the circumstances and a court may not evaluate each articulated reason for the stop. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at paragraph two of the syllabus citing *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**{¶25}** For the reasons previously set forth, there was sufficient reasonable suspicion to initiate the traffic stop and sufficient reasonable articulable suspicion cause to expand the scope from that of a minor traffic offense to an investigation into a possible stolen vehicle. This would include Trooper Golias requesting another officer's presence who specializes in the investigation of stolen vehicles. Ultimately, appellant's prolonged detention was reasonable under the totality of the circumstances.

**{¶26}** Finally, appellant argues that Troopers Golias and Skaggs did not have a warrant to seize his car and there was no valid warrant exception. Appellant cites R.C. 4549.63(A), which states that law enforcement may seize a vehicle based on probable cause to believe that any vehicle identification number has been covered but the seizure must be pursuant to a warrant unless the circumstances are within one of the warrant exceptions established by the Ohio Supreme Court or the United States Supreme Court. The state argues that the automobile exception excused the warrant requirement.

Case No. 16 MA 105

**{¶27}** Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped automobile based on the automobile exception. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000) citing *Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). "The automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992) citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the warrant requirement of the Fourth Amendment. *Id.* citing *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

**{¶28}** For the reasons previously stated, Trooper Golias' stop of appellant was valid. Also for the reasons previously stated, there was probable cause to believe that the truck was stolen due to the peeled steering column, missing screws in the dashboard, cracked dashboard, and the concealed identification numbers. The fact that appellant was not arrested when Troopers Golias and Skaggs seized the truck does not negate the fact that there was sufficient probable cause for the troopers to seize the truck. Ultimately, because the contraband at issue was the truck and sufficient probable cause to believe it was stolen existed, the troopers' seizure of the truck was not a violation of appellant's Fourth Amendment right to be free from an unreasonable seizure as it was pursuant to the automobile exception of the warrant requirement.

**{¶29}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶30}** Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN ADMITTING HEARSAY TESTIMONY AND DOCUMENTS, AS WELL AS OPINION TESTIMONY BY AN OFFICER, FOR WHICH NO EXCEPTION EXISTED UNDER THE RULES OF EVIDENCE.

**{¶31}** Appellant argues that the opinions and evidence that led the troopers to

conclude that the truck was stolen constituted hearsay and should have been excluded at trial. Furthermore, appellant argues that the trial court inappropriately allowed Trooper Skaggs to testify about his personal opinion that appellant committed a crime.

**{¶32}** The admission of evidence is within the discretion of the trial court and the court's decision will only be reversed upon a showing of abuse of discretion. *State ex rel. Sartini v. Yost*, 96 Ohio St. 3d 37, 2002-Ohio-3317, 770 N.E.2d 584. This includes rulings on hearsay. *State v. Rupp*, 7th Dist. No. 05 MA 0166, 2007-Ohio-1561, ¶ 78. Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Sartini* at ¶ 21, citing *State v. Herring*, 94 Ohio St. 3d 246, 2002-Ohio-796, 762 N.E.2d 940.

**{¶33}** As appellant raise numerous challenges, we will examine each in turn.

**{¶34}** First, appellant challenges testimony from Trooper Skaggs regarding the condition the truck was in at the time appellant purchased it from Varney. (Trial Tr. 309-310, 316). Trooper Skaggs testified that the truck was maroon when Varney sold it to appellant. (Trial Tr. 309). He further testified that the VIN on the truck indicated that it should have had a different engine than the engine that was actually in the truck. (Trial Tr. 310). And he testified that a photograph of the truck provided by Varney showed that the truck did not have a gap between the headlights and the bumper at the time of the sale. (Trial Tr. 316). Appellant objected to the trooper's testimony as to what Varney told him on the basis of hearsay. (Trial Tr. 309, 310, 316).

**{¶35}** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is inadmissible. Evid.R. 802.

**{¶36}** Varney told Trooper Skaggs about the physical description of the truck when she sold it to appellant. This physical description of the truck when Varney sold it to appellant was used to prove the truth of the matter asserted. In other words, it was used to prove that the truck at the time of the sale was maroon, had a different engine, and did not have gap between the headlights and the bumper. Moreover, the state then used this hearsay to show that Varney's truck's identity was placed on the Cornerstone truck in order to conceal the fact that the Cornerstone truck was stolen.

**{¶37}** Trooper Skaggs' testimony about the physical characteristics of the truck

when Varney sold the truck to appellant was hearsay. Importantly, the state used this hearsay to establish a significant aspect of its case. Without evidence of what the truck registered to the public VIN was supposed to look like, the jury would not be able to ascertain whether the truck appellant was driving belonged to him or not. Thus, we conclude that the trial court erred in admitting this testimony over appellant's objection.

{¶38} Second, appellant argues that any reference regarding information Trooper Skaggs recovered from the NICB and the NCIC databases was inadmissible hearsay. Appellant did not object to these references to the two databases. (Trial Tr. 294-295, 300). Failure to object to trial testimony waives all but plain error review. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶39} The Twelfth District has held that evidence from a national database is admissible as non-hearsay as long as it was admitted for a purpose other than to prove the truth of the matter asserted. See *State v. Beltran*, 12th Dist. No. CA2004-11-015, 2005-Ohio-4194, ¶ 21-22. Trooper Skaggs testified that he ran the VINs through the databases as he was describing the steps he took in his investigation. (Trial Tr. 294-295, 300). The trooper's testimony regarding his investigation as a whole, including results from the NICB and the NCIC, was meant to show the continuing course of the investigation into the truck. Ultimately, the trial court did not commit plain error by allowing the testimony concerning these two databases.

{¶40} Third, appellant challenges Trooper Skaggs' testimony as to the contents of a Columbiana Police Report dated March 10, 2014. (Trial Tr. 304; State's Ex. 22). Trooper Skaggs testified that the police report concerned a vehicle stolen from Cornerstone and that the VIN number of the stolen vehicle matched the VIN number from the truck at issue. (Trial Tr. 304-305). Appellant did not object. The state withdrew Exhibit 22 during the introduction of exhibits noting that "it was not drafted by one of the witnesses." (Trial Tr. 364).

{¶41} Trooper Skaggs' testimony as to the information contained in the Columbiana Police Report was inadmissible hearsay. The Columbiana Police Report was drafted by an officer who did not testify at appellant's trial and the statements in the

report were used to prove the truth of the matter asserted. Officer Skaggs' testimony regarding the contents of the report was offered to prove that the VIN located on appellant's truck matched a VIN for a truck reported stolen from Cornerstone. It was plain error for the trial court to allow Trooper Skaggs to testify as to the contents of this report.

{¶42} Fourth, appellant challenges Trooper Skaggs' testimony concerning statements made by Chad Zwingler from Cornerstone to him. Specifically, appellant challenges the following testimony:

**Q**     Were you able to ascertain any information regarding the tires on this vehicle after speaking with Cornerstone?

**A**     The information that the Cornerstone Chad Zwingler provided to me - -

**Mr. Joltin:** Objection.

**The Court:** Sustained.

* * *

**Q**     Give me a minute. After following up on your investigation with Cornerstone, pursuant to your investigation, were you able to determine the type of tires that this vehicle had?

**A**     Yes. And the tires were consistent with what the vehicle had on it at the time that they were stolen.

(Trial Tr. 306).

{¶43} This testimony is also hearsay as it is based on statements from Cornerstone's representative. Trooper Skaggs never testified that he personally investigated or saw the truck stolen from Cornerstone. Any information regarding the type of tires on that truck was gained from statements conveyed to him by Zwingler, who did not testify. These statements were used to show that the tires on appellant's truck were consistent with the tires on the truck stolen from Cornerstone. Thus, the trial

court abused its discretion in allowing Trooper Skaggs' testimony as to what he learned from Cornerstone.

**{¶44}** Fifth, appellant challenges Trooper Skaggs' testimony that an anonymous tip was called in regarding a "black semi-gloss primer Dodge Ram pickup truck which frequented the Mineral Ridge, Austintown area that was possibly a retagged vehicle specifically involving Bryan Dotson." (Trial Tr. 290). This statement is not hearsay as it was offered to show the effect on the listener. Responding to the very next question, Trooper Skaggs testified that he relayed that information to Trooper Golias so Trooper Golias could keep an eye out for a vehicle matching that description. (Trial Tr. 290).

**{¶45}** Finally, appellant argues that it was improper to allow Troopers Skaggs and Golias to testify regarding their opinions about whether appellant was guilty of a crime. Appellant cites two specific instances where he claims this happened. The first instance occurred during Trooper Golias' testimony where the trooper testified:

> The Federal Identification decal looks like this. You probably will all recognize them after you look at your car. It has the full VIN number that's on it. When it's - - you cannot alter, tamper or destroy that because just like a public VIN number, it identifies that vehicle. It cannot be removed. It can't be covered. When it's covered like this we've got to make sure we have the true identity of the vehicle. This is the picture of it with the black spray paint over it.

(Trial Tr. 257-258). The second instance was during Trooper Skaggs' testimony when asked what he noticed during his initial investigation. The trooper stated, "I opened the door to look at the Federal Identification decal, and it had been partially painted over, in violation of the Ohio Revised Code. The dashboard VIN, public VIN." (Trial Tr. 292).

**{¶46}** "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 120 quoting Evid.R. 701. As

Case No. 16 MA 105

both of these pieces of testimony from Troopers Skaggs and Golias identify the fact that a VIN in the truck was concealed and this was a violation of the Ohio Revised Code, which ultimately led to the investigation of the truck at issue being stolen, the elements of Evid.R. 701 are satisfied and it was not an abuse of discretion to permit this testimony.

{¶47} Given the substantial amount of inadmissible hearsay that the trial court admitted, appellant was denied his right to fair a trial. While the state did introduce other admissible evidence that may have proved the elements of receiving stolen property, we cannot overlook the potential effect the significant amount of inadmissible hearsay likely had on the jury.

{¶48} We note, however, the inadmissible hearsay evidence did not impact appellant's tampering with vehicle identification numbers conviction. The inadmissible hearsay evidence was offered to prove the elements of receiving stolen property. Thus, our resolution of this assignment of error only affects appellant's receiving stolen property conviction.

{¶49} Accordingly, appellant's second assignment of error has merit in part and is sustained in part.

{¶50} Appellant's third assignment of error states:

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE CONFRONTATION CLAUSE BY ALLOWING PREJUDICIAL HEARSAY STATEMENTS TO OVERWHELM APPELLANT'S TRIAL.

{¶51} In addition to the arguments raised in his second assignment of error, appellant argues Trooper Skaggs' testimony as to what others told him regarding the truck and as to the Columbiana Police Report violated his right to confront the witnesses against him.

{¶52} The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness (unless that witness is unavailable to testify and the defendant had a prior opportunity for cross examination). *State v. Grabe*, 7th Dist. No. 16 MA 0061, 2017-Ohio-1017, ¶ 20 citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.3d 177 (2004).

Case No. 16 MA 105

**{¶53}** The question here is whether the statements by Varney and Zwingler to the troopers constituted testimonial statements. For Confrontation Clause purposes, a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for trial." *State v. Stahl*, 111 Ohio St.3d 186, 855 N.E.2d 834, 2006-Ohio-5482, ¶ 36 quoting *Crawford*, 541 U.S. at 52.

**{¶54}** In determining whether a statement is testimonial, courts should focus on the expectation of the declarant at the time of making the statement; the intent of the questioner is relevant only if it could affect a reasonable declarant's expectations. *Id.* In making the determination if a statement is testimonial, "the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, -- U.S. --, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). Statements are non-testimonial when made in the course of a police interrogation under circumstances which objectively show that the primary purpose of the statements was to enable police assistance to meet an ongoing emergency. *Id.* citing *Hammon v. Indiana*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish past events potentially relevant to later criminal prosecution. *Id.* citing *Hammon*.

**{¶55}** The statements made by Varney and Zwingler that were admitted at trial were testimonial in nature. The conversations Trooper Skaggs had with both of these people took place after appellant's truck was impounded. There was no ongoing emergency that Trooper Skaggs was responding to when these conversations took place. The statements Trooper Skaggs obtained from these people were meant to establish past events that would be potentially relevant to a later criminal prosecution.

**{¶56}** Thus, the trial court's admission of Trooper Skaggs' testimony regarding what Varney and Zwingler told him about the trucks violated appellant's right to confront these witness against him. The state should have subpoenaed Varney and Zwingler to testify so that appellant could cross-examine them.

**{¶57}** Again, we note the inadmissible evidence did not impact appellant's

Case No. 16 MA 105

tampering with vehicle identification numbers conviction. Trooper Skaggs' testimony regarding what Varney and Zwingler told him was offered to prove the elements of receiving stolen property. Thus, our resolution of this assignment of error also only affects appellant's receiving stolen property conviction.

**{¶58}** Accordingly, appellant's third assignment of error has merit and is sustained.

**{¶59}** Appellant's fourth assignment of error states:

INSUFFICIENT EVIDENCE SUPPORTED APPELLANT'S CONVICTIONS.

**{¶60}** Appellant argues that the state failed to prove all of the elements of the charges it brought against him.

**{¶61}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. No. 12 CO 50, 2013-Ohio-5293, ¶ 10 citing *State v. Thompkins*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.* citing *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).

**{¶62}** Appellant was convicted of receiving stolen property and tampering with vehicle identification numbers.

**{¶63}** Receiving stolen property is defined as receiving, retaining, or disposing of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. R.C. 2913.51(A). If the property at issue is a motor vehicle, receiving stolen property is a felony of the fourth degree. R.C. 2913.51(C).

**{¶64}** Sufficient evidence existed to warrant appellant's conviction for receiving stolen property. When reviewing the sufficiency of the evidence on appeal, we must

consider whether the evidence that the state offered and the trial court admitted, whether the trial court admitted the evidence erroneously or not, would have been sufficient to sustain a guilty verdict. *State v. Grabe*, 7th Dist. No. 16 MA 0061, 2017-Ohio-1017, ¶ 15, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 17, and *Lockhart v. Nelson*, 488 U.S. 33, 35, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). Thus, in conducting our sufficiency review, we must consider all of the evidence offered by the state in this case, including the inadmissible hearsay evidence

**{¶65}** The evidence at trial showed that appellant was operating a truck with two VINs concealed with black spray paint (Trial Tr. 270), appellant was the one who spray painted the truck black (Trial Tr. 252), and the public VIN was different from the secondary VIN (Trial Tr. 299-300). Moreover, the evidence indicated that the truck Varney sold to appellant was a different color than the truck he was driving (Trial Tr. 309), did not have a gap between the headlights and bumper (Trial Tr. 316), and had a different engine than it did (Trial Tr. 310). And the evidence demonstrated that a police report was filed regarding a stolen vehicle with the same VIN that was located on the truck appellant was driving. (Trial Tr. 304-305). When construing this evidence in the light most favorable to the state, as we are required to do, sufficient evidence existed to prove receiving stolen property.

**{¶66}** The tampering with vehicle identifying numbers statute provides: "No person, with purpose to conceal or destroy the identity of a vehicle part, shall remove, deface, cover, alter, or destroy any vehicle identification number or derivative of a vehicle identification number on a vehicle or vehicle part." R.C. 4549.62(A). Appellant essentially contends that the state failed to prove the element that he acted "with purpose to conceal or destroy the identity of a vehicle."

**{¶67}** Appellant does not contest the fact that the two VINs on the truck were concealed with black paint. (Trial Tr. 247, 249). The question is whether sufficient evidence showed that appellant acted purposefully to conceal or destroy the identity of the truck. Since intent goes to a person's state of mind, it must be gathered from the surrounding facts and circumstances. *See In re Washington*, 81 Ohio St.3d 337, 340, 691 N.E.2d 285 (1998), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936).

{¶68} Trooper Golias testified that appellant was driving a truck with at least two VINs concealed with black paint. (Trial Tr. 247, 249). The truck was spray painted black by appellant. (Trial Tr. 252). The paint that was covering the VINs was also black. (Trial Tr. 247, 249). The two different VINs on the truck being concealed with black paint, which appellant admitted using on the truck, was sufficient evidence to establish the intent for this offense.

{¶69} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶70} Appellant's fifth assignment of error states:

THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT APPELLANT'S CONVICTIONS.

{¶71} Appellant argues that his convictions are against the manifest weight of the evidence.

{¶72} We have already determined that appellant's conviction for receiving stolen property must be reversed since the jury's verdict was likely affected by the amount of inadmissible hearsay testimony. Therefore, we will only review his conviction for tampering with vehicle identifying numbers in this assignment of error.

{¶73} The claim that a verdict is against the manifest weight of the evidence concerns whether a jury verdict is supported by "the greater amount of credible evidence." *State v. Merritt*, 7th Dist. No. 09 JE 26, 2011-Ohio-1468 ¶ 45 citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The reviewing court weighs the evidence and all reasonable inferences and considers the credibility of the witnesses. *Thompkins* at 387. Although the appellate court acts as the proverbial "thirteenth" juror under this standard, it rarely substitutes its own judgment for that of the jury's. *Id.* This is because the trier of fact is in the best position to determine the credibility of the witnesses and the weight to be given to the evidence. *Id.* citing *State v. Higinbotham*, 5th Dist. No. 2005CA00046, 2006-Ohio-635. Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn a jury verdict. *Id.* citing *State v. Woullard*, 158 Ohio App.3d 31, 2001-Ohio-3395, 813 N.E.2d 964 (2d Dist.). "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence

Case No. 16 MA 105

except by the concurrence of all three judges hearing the cause." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 36, quoting Ohio Constitution, Article IV, Section 3(B)(3).

**{¶74}** In addition to the evidence set out above, Trooper Golias testified that while he was able to remove the paint from the public VIN on the dashboard in order to read it, he did not feel he was able to clean the paint off of the VIN decals in the door frame out of fear that he would destroy them. (Trial Tr. 272). The public VIN revealed that the truck was registered to appellant. (Trial Tr. 272). Trooper Skaggs testified that when he first inspected appellant's truck, there was a VIN missing in the interior engine compartment. (Trial Tr. 322). Furthermore, he testified that the missing VIN in the engine compartment in and of itself constituted a concealed identity. (Trial Tr. 322-323). He also testified about a secondary concealed VIN that is located on cars whose location is not known to the general public and how he received training in locating that VIN. (Trial Tr. 324-325).

**{¶75}** Appellant's conviction for tampering with vehicle identifying numbers was not against the manifest weight of the evidence. The evidence demonstrated that appellant was operating a truck with two different VINs concealed with black spray paint and that appellant had spray-painted the truck black. The evidence does not show that the jury clearly lost its way in convicting appellant.

**{¶76}** Accordingly, appellant's fifth assignment of error is without merit and is overruled.

**{¶77}** Appellant's sixth assignment of error states:

> DEFENSE COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILURE TO OBJECT TO OBVIOUS, INADMISSIBLE HEARSAY EVIDENCE.

**{¶78}** Appellant argues that because his trial counsel failed to object to hearsay and confrontation issues concerning evidence pointed out in previous assignments of error, his trial counsel was ineffective.

**{¶79}** When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an

objective standard of reasonableness. *State v. Sanders*, 94 Ohio St. 3d 150, 2002-Ohio-350, 761 N.E.2d 18 citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* *Strickland* charges reviewing courts to apply a heavy measure of deference to counsel's judgments and to indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.*

{¶80} Appellant's counsel lodged numerous objections to multiple instances of hearsay throughout appellant's trial. (Trial Tr. 306, 309, 310, 316). Thus, counsel was aware of, and objected to numerous hearsay issues. Additionally, two of the items appellant takes issue with in this appeal that he asserts his counsel should have objected to (the reference to the national databases and the troopers' opinions), we have found to be admissible statements. Thus, no objection was warranted. The only item counsel failed to object to that this court found to be inadmissible hearsay was Trooper Skaggs' testimony regarding the contents of the Columbiana Police Report. The failure to make one hearsay objection in this case does not establish that counsel fell below an objective standard of reasonableness.

{¶81} Accordingly, appellant's sixth assignment of error is without merit and is overruled.

{¶82} Appellant's seventh assignment of error states:

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS WITHOUT A HEARING ON THE EXPLANATION FOR MISSING DASHCAM VIDEO.

{¶83} Appellant argues the trial court erred in dismissing his motion to dismiss without a hearing. Appellant argues that by denying his motion without a hearing, the trial court failed to allow him to meet his burden that the tape contained exculpatory evidence that was improperly destroyed.

{¶84} A trial court's decision on a motion to dismiss on the basis that the state

failed to disclose to the defense materially exculpatory evidence is subject to a de novo standard of review. *State v. Whalen*, 9th Dist. No. 08CA009317, 2008-Ohio-6739, ¶ 7-8.

{¶85} Pursuant to Crim.R. 12(F), "a court may adjudicate a motion based upon * * * a hearing, or other appropriate means." A strict reading of Crim.R. 12(F) states that a hearing on pretrial motions is granted at the trial court's discretion. A hearing is not mandatory as appellant argues.

{¶86} With regard to the videotape potentially containing exculpatory evidence, the Due Process Clause of the Fourteenth Amendment to the United States protects a criminal defendant from being convicted of a crime where the state fails to preserve materially exculpatory evidence. *State v. Tarleton*, 7th Dist. No. 02-HA-541, 2003-Ohio-3492, ¶ 10 citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). This also applies to potentially useful evidence the state destroys in bad faith. *Id.* citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Evidence is materially exculpatory if: (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other means. *State v. Benton*, 136 Ohio App.3d 801, 737 N.E.2d 1046 (6th Dist. 2000) citing *Trombetta*, 467 U.S. at 489. The burden is on the defendant to show that the evidence is both favorable and material to the defense and that there is a reasonable probability that the outcome would have been different had the evidence been presented. *State v. Whalen*, 2008-Ohio-6739 at ¶ 8 citing *State v. Davis*, 116 Ohio St.3d 404, 449, 2008-Ohio-2, 880 N.E.2d 31, ¶ 338-339. A reasonable probability is a probability that is sufficient to undermine the confidence in the outcome. *State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898, 911 (1988), citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40.

{¶87} Appellant argues that the tape only potentially contained useful evidence. As such, it is incumbent on appellant to show that the tape's unavailability was the result of bad faith on the part of the state. See *Tarleton* at ¶ 10. Appellant's argument is that because the trial court denied appellant's motion without a hearing, appellant was unable to ascertain necessary facts to determine if the tape was destroyed in bad faith.

**{¶88}** On August 5, 2015, appellant filed a motion for discovery and to examine exculpatory and mitigatory material with the trial court. This motion requested, among other things, "[a]ll statements of any kind within the possession of the State, made by the Defendant and/or any co-Defendants." On the same day, appellant filed a motion to disclose and made specific requests for exculpatory evidence. The first time appellant or his trial counsel learned of the existence of a videotape was on January 28, 2016, the date of appellant's suppression hearing. At that hearing, Trooper Golias testified on cross-examination that there was in fact an audiotape or videotape of appellant's traffic stop. (Supp. Tr. 43). Said tape was not provided to the prosecutor's office. (Supp. Tr. 43-44). After a brief recess, it was concluded that any recording of appellant's traffic stop was overwritten pursuant to the Ohio State Highway Patrol's standard retention policy. (Supp. Tr. 45). According to the state, this was done because "it was not requested by any party to be retained." (Supp. Tr. 45). The court then granted appellant two weeks to prepare a motion regarding the deleted recording. (Supp. Tr. 46).

**{¶89}** Appellant's original traffic stop occurred on May 22, 2014. (Supp. Tr. state's exhibit 1). Appellant was indicted on July 9, 2015, over 13 months after his traffic stop. Appellant filed his discovery requests almost one month after that on August 5, 2015. While a hearing on appellant's motion to dismiss may have provided more evidence relevant to the tape, it was appellant's burden to show a reasonable probability that the information on the tape would to undermine the confidence of the outcome or that the tape was erased due to bad faith.

**{¶90}** Appellant's motion to dismiss alleged no specific facts about what was allegedly on the tape that was exculpatory in nature. Appellant's brief in this appeal is also silent on what the tape may have contained that was potentially exculpatory. The only thing known for certain from the record is that a tape existed and was erased pursuant to the Ohio State Highway Patrol's retention policy.

**{¶91}** Nevertheless, appellant cites two cases where other districts have held that when the state breaches its duty to respond in good faith to a defense request to preserve evidence, the appropriate remedy is to shift the burden of proof to the state as to the exculpatory value of the evidence. See *City of Columbus v. Forest*, 36 Ohio

Case No. 16 MA 105

App.3d 169, 173, 522 N.E.2d 52 (10th Dist.1987) see also *State v. Benton*, 136 Ohio App.3d 801, 805-806, 737 N.E.2d 1046, 1049 (6th Dist.2000). But this Court has held that *Forest* and *Benton* do not apply when the defendant does not file a specific and immediate request, where there was no indication that the state acted in bad faith, and the value of the tape was only questionable. *See Tarleton* at ¶ 22. Moreover, this Court held that the burden shifting approach set forth in *Forest* and *Benton* only applied when the state fails to respond in good faith to a defendant's request to preserve evidence. *State v. Wolf*, 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, ¶ 11-15 (7th Dist.). Ultimately, because appellant makes no arguments concerning the contents of the tape and there is no evidence that the state acted in bad faith when it erased the tape, appellant failed to meet his burden that the tape would have had a reasonable probability to affect the outcome of his trial.

{¶92} Accordingly, appellant's seventh assignment of error is without merit and is overruled.

{¶93} Appellant's eighth assignment of error states:

> THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY DELIBERATELY ADMITTING INADMISSIBLE HEARSAY EVIDENCE TO THE JURY ONLY TO WITHDRAW THAT EVIDENCE ONCE INADMISSIBLE HEARSAY TESTIMONY HAD BEEN ELICITED REGARDING THE SAME.

{¶94} Appellant argues that, in two instances, the state committed prosecutorial misconduct by eliciting testimony concerning two proposed exhibits only to later withdraw those proposed exhibits.

{¶95} Given our resolution of appellant's second and third assignments of error, appellant's eighth assignment of error is moot.

{¶96} Appellant's ninth assignment of error states:

> THE TRIAL COURT ACTED CONTRARY TO LAW IN SENTENCING APPELLANT TO CONSECUTIVE JAIL TERMS AS PART OF A COMMUNITY CONTROL SANCTION.

{¶97} Appellant argues that his sentence was contrary to law in that the trial court ordered him to serve two six month jail terms consecutively as part of a community control sanction. Furthermore, appellant argues that a jail term of 12 months is contrary to law.

{¶98} The trial court sentenced appellant to five years of community control with the Adult Parole Authority.  As a condition of community control, the court ordered appellant to serve the first six months of each count in jail and for those two jail terms to run consecutively.

{¶99} Because we are reversing appellant's conviction for receiving stolen property, his sentence on that count is necessarily vacated.  The only sentence that remains, therefore, is appellant's sentence for tampering with vehicle identifying numbers.  Thus, there is no issue concerning consecutive sentences.

{¶100} Accordingly, appellant's ninth assignment of error is moot.

{¶101} Appellant's tenth assignment of error states:

THE TRIAL COURT ERRED IN ISSUING A RESTITUTION ORDER NOT AUTHORIZED BY LAW.

{¶102} The trial court ordered two restitution payments.  It ordered appellant to make restitution to Auto Owner's Insurance in the amount of $10,713.38 and it ordered appellant to make restitution to Cornerstone in the amount of $1,000.00.

{¶103} The restitution order was necessarily based on the receiving stolen property in the form of a vehicle conviction.  Because we are reversing that conviction, appellant's tenth assignment of error is now moot.

{¶104} For the reasons previously stated, appellant's conviction for tampering with vehicle identifying numbers is hereby affirmed.  Appellant's conviction for receiving stolen property in the form of a vehicle is reversed, his sentence on that conviction is vacated, and the matter is remanded for further proceedings pursuant to law and consistent with this opinion. Additionally, the restitution order is vacated.

Waite, J., concurs

Robb, P. J., concurs

Case No. 16 MA 105

[Cite as *State v. Dotson*, 2018-Ohio-2481.]

———————————

For the reasons stated in the Opinion rendered herein, appellant's first, fourth, fifth, sixth, and seventh assignments of error are without merit and are overruled. Appellant's second assignment of error has merit in part and is sustained in part. Appellant's third assignment of error has merit and is sustained. Appellant's eighth, ninth, and tenth assignments of error are moot. It is the final judgment and order of this Court that the judgment of the Common Pleas Court, Mahoning County, Ohio, is hereby affirmed as to appellant's tampering with vehicle identifying numbers conviction. It is reversed as to appellant's receiving stolen property in the form of a vehicle conviction, his sentence on that conviction is vacated, and the matter is remanded for further proceedings according to law and consistent with the opinion herein. The restitution order is also vacated. Costs taxed against appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**