[Cite as *State v. Grabe*, 2017-Ohio-1017.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 MA 0061 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KYREE GRABE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Criminal Appeal from the Youngstown
Municipal Court of Mahoning County,
Ohio
Case No. 2016 CRB 222

JUDGMENT:        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Atty. Shelli Ellen Freeze
Assistant Prosecutor
26 South Phelps Street, 4th floor
Youngstown, Ohio 44503

For Defendant-Appellant:    Atty. John A. Ams
134 Westchester Drive
Youngstown, Ohio 44515

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: March 20, 2017

ROBB, P.J.

{¶1} Defendant-Appellant Kyree Grabe appeals his domestic violence conviction which was entered after a bench trial in the Youngstown Municipal Court. Appellant contends the state failed to present sufficient evidence to establish the elements of the offense if we eliminate the victim's statements, which he says were introduced in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. He alternatively contends the trial court's decision was contrary to the manifest weight of the evidence. For the following reasons, Appellant's arguments are overruled, and the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2} On February 1, 2016, Appellant was arrested for domestic violence for knowingly causing or attempting to cause physical harm to a family or household member, a first degree misdemeanor. A complaint was filed in the Youngstown Municipal Court. Although the victim was subpoenaed, she failed to appear for trial on April 24, 2016. The trial was reset for May 11, 2016, and a capias was issued which ordered the victim's arrest for failing to appear on the subpoena. The victim could not be located, and she failed to appear for the rescheduled trial. The case proceeded without her.

{¶3} A police officer testified he responded to a call reporting a fight at a store in Youngstown. (Tr. 9). He entered the store and found the victim "very irate, upset, loud voice." He explained: "As I was trying to get the story from her, she wouldn't really calm down for me, so it was difficult to get the story from her." When asked if the victim was very upset, the officer answered in the affirmative. (Tr. 10). The trial court allowed the officer to testify to what the victim said, over the objection of defense counsel. (Tr. 10-11).

{¶4} The victim told the officer she and her boyfriend got in a fight in front of the store and he pushed her to the ground by striking her chest. (Tr. 11). She informed the officer she and Appellant had a child together. (Tr. 15). The officer brought the victim outside of the store. (Tr. 11). He testified he noticed a red mark in the victim's chest area. (Tr. 11, 19). He considered it a small amount of redness and did not mention it in his report. (Tr. 16-19). The victim filled out a domestic violence

form. (Tr. 12). The officer then arrested Appellant who had "pulled up" in front of the store in a car while the officer was speaking to the victim. (Tr. 11-13). The officer identified the defendant. (Tr. 13).[1]

{¶5} The defense offered as an exhibit the birth certificate of the victim's child who was born three months prior to the incident. The defense emphasized Appellant was not listed as the father on the birth certificate. The state pointed out that no father was listed and the child was given Appellant's last name.

{¶6} The trial court found Appellant guilty of domestic violence. Appellant was sentenced to 100 days in jail with credit for 100 days of time served. He was placed on basic probation for one year. The within timely appeal followed.

<u>ASSIGNMENT OF ERROR ONE: CONFRONTATION CLAUSE</u>

{¶7} Appellant sets forth two assignments of error, the first of which contends:

"APPELLANT'S DOMESTIC VIOLENCE CONVICTION IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE BECAUSE THE CONVICTION IS ENTIRELY BASED UPON EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE UNITED STATES CONSTITUTION."

{¶8} Whether the evidence is sufficient to sustain a conviction is a question of law dealing with the adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The Double Jeopardy Clause bars retrial after a reversal on grounds of sufficiency. *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

---

[1] The state tried to introduce phone recordings from the police station when Appellant was booked and phone recordings from the jail to show Appellant convinced the victim not to appear in court. However, the court refused to admit the recordings, concluding there was no proof it was Appellant who was speaking on the calls (even though the jail recordings were placed with Appellant's inmate PIN). The court would not allow the state to recall the first police officer to the stand because he stayed in the courtroom after testifying and there had been a separation of witnesses. The state tried to call another witness, apparently to identify voices, but the court would not allow her to testify because she was not on the witness list.

Notably, the United States Supreme Court has "explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's own misconduct is responsible for a witness's unavailability." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 105. Besides submitting the recording as a declaration against interest due to Appellant's apologies, the state was also attempting to introduce the recordings to show he waived his Confrontation Clause rights with regards to the victim's absence. (Tr. 8).

{¶9} In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999). *See also State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). Circumstantial evidence inherently has the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines reasonable minds could not have found the elements of the offense proven beyond a reasonable doubt. *Id.* at 485.

{¶10} Appellant was convicted of domestic violence under R.C. 2919.25(A), which has the following elements: knowingly causing or attempting to cause physical harm to a family or household member. A family or household member includes, "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b).

{¶11} On these elements, the state presented the testimony of the responding officer. The officer testified to his observations, such as: the victim was very irate, upset, and loud when he arrived; she "wouldn't calm down" while attempting to speak to the officer; the officer observed a red mark on the victim's chest; and Appellant was in a car in front of the store while the officer was speaking to the victim. The officer also testified the victim said: she and her boyfriend got in a fight in front of a store; Appellant pushed her to the ground by striking her in the chest; and Appellant is the father of her child.

{¶12} Viewing this evidence and the rational inferences in the light most favorable to the prosecution, the state presented sufficient evidence to satisfy the elements of domestic violence. Whether the officer's testimony on what the victim told him was admissible presents a different question. Appellant does not dispute this evidence was legally sufficient if the officer's testimony (on what the victim told him) is considered. Rather, he contends we must determine whether the evidence was admissible prior to reviewing the question of sufficiency. In other words, he believes we are to evaluate the trial court's evidentiary rulings and then review only the evidence that was properly admitted by the trial court. However, this suggestion is incorrect.

**{¶13}** As aforementioned, a reversal on sufficiency grounds bars retrial of the defendant. *Thompkins*, 78 Ohio St.3d at 387, citing *Tibbs*, 457 U.S. at 41. However, retrial is not barred by Double Jeopardy principles if the reversal is based upon a trial court's evidentiary ruling. *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). "When evidence admitted at trial is sufficient to support a conviction, but on appeal, some of that evidence is determined to have been improperly admitted, the Double Jeopardy Clauses of the United States and Ohio Constitutions will not bar retrial. (*Lockhart v. Nelson* (1988), 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265, followed.)" *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, syllabus.

**{¶14}** Consequently, when the trial court in *Brewer* was found to have erred in admitting hearsay, the reviewing court was still required to review all of the evidence (including the erroneously admitted evidence) in conducting the sufficiency review. *See id.* If the totality of this evidence was sufficient to prove the elements of the offense, then the reviewing court must remand for a new trial (as opposed to entering an acquittal as required where there was insufficient evidence). *Id.*

**{¶15}** In summary, when reviewing the sufficiency of the evidence, the appellate court must consider whether "the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict * * *." *Id.* at ¶ 17, quoting *Lockhart*, 488 U.S. at 35. *See also State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 80 ("on a claim of insufficient evidence, the reviewing court considers all the evidence admitted against the appellant at trial"), citing *Lockhart*, 488 U.S. at 40-42.

**{¶16}** This leaves Appellant's argument that the victim's statements to the officer were improperly admitted. The state initially responds by arguing the statements qualified as excited utterances under Evid.R. 803(2). Pursuant to this evidentiary rule, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule (regardless of whether the declarant is available as a witness). Evid.R. 803(2). The state points to the foundational testimony presented by the officer: he responded to a call about a fight; the victim was found in the store;

the victim was very irate, upset, and loud; and she would not calm down while telling the story. (Tr. 9-10). The officer subsequently added that he observed a red mark on the victim's chest and the defendant approached when they exited the store. (Tr. 11-12).

**{¶17}** The state concludes the trial court properly exercised its discretion in permitting the officer to testify as to the victim's excited utterances, noting we do not substitute our judgment for that of the trial court on such evidentiary matters if the decision was not unreasonable. *Citing, e.g., Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955) ("the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision").

**{¶18}** In apparent recognition of this discretion, Appellant does not challenge the trial court's decision under Evid.R. 803(2). Instead, he emphasizes: "Although a hearsay statement may fall within an Evid.R. 803 exception to hearsay, it may nonetheless be inadmissible as a violation of the Confrontation Clause." The crux of Appellant's argument is the victim's statements to the police officer were "testimonial" in nature and therefore the officer's testimony as to those statements was barred by the Confrontation Clause since the victim did not testify. The state counters this by asserting the officer's "primary purpose" was to respond to an ongoing emergency, not to obtain testimonial evidence against the defendant.

**{¶19}** The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Sixth Amendment to the U.S Const. *See also* Fourteenth Amendment to the U.S. Const. (binding the states). In the past, an out-of-court declaration by an unavailable witness did not run afoul of the Confrontation Clause if it was accompanied by adequate "indicia of reliability." *See, e.g., Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (if the declaration "falls within a firmly rooted hearsay exception" or exhibits "particularized guarantees of trustworthiness").

{¶20} In 2004, the United States Supreme Court changed this test and held the Confrontation Clause prohibits the introduction of "testimonial" statements by a non-testifying witness (unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination). *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Non-testimonial hearsay was left to the hearsay law of the states. *Id.* at 68. The definition of "testimonial" was said to apply "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The *Crawford* Court found a police interrogation of the defendant's wife at a station house (after she and her husband were arrested and *Mirandized*) produced testimonial (as opposed to non-testimonial) statements, which were ruled inadmissible. *Id.* at 38, 52-53.

{¶21} In the consolidated cases of *Davis* and *Hammon*, the Court addressed statements to law enforcement officers by domestic violence victims. *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (consolidated with *Hammon v. Indiana*). The Court pointed out how *Crawford* was concerned only with the type of police interrogation in that particular case and did not define "precisely which police interrogations produce testimony" so as to implicate the Confrontation Clause. *Id.* at 822, 826.

{¶22} The Court created the "primary purpose" test to determine whether statements were testimonial or non-testimonial. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

{¶23} In *Davis*, the Court found statements to a 911 operator during and soon after a domestic incident were not formal and were elicited in order to "resolve the present emergency." *Id.* at 827. In *Hammon*, statements were made by the victim under the following circumstances: the victim was sitting on the front porch when police arrived; she told the police nothing happened; they asked to enter her house;

they saw glass shattered on the floor from a broken heater; they separated the victim from her husband; they questioned the victim; and they obtained an affidavit from the victim. The Court found there was "no emergency in progress" and it was "clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct." *Id.* at 829. The officer questioning the victim was seeking to determine "what happened" rather than "what is happening." *Id.*

**{¶24}** In 2011, the Court clarified that reviewing courts should consider all relevant circumstances. *Michigan v. Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). In *Bryant*, the victim of a shooting drove to another location where police responded; he told police the identity of the shooter and the location of the shooting. The Michigan Supreme Court found this testimony inadmissible under *Crawford* and *Hammon* and reversed the defendant's conviction. The United States Supreme Court reversed, concluding the circumstances of the interaction between the victim and the police objectively indicated the primary purpose of the interrogation was to enable police to meet an ongoing emergency. *Id.* at 349, 376. It was also concluded the victim's primary purpose was not to prove past events for a subsequent criminal prosecution. *Id.* at 375.

**{¶25}** The *Bryant* Court held, "not all those questioned by the police are witnesses and not all 'interrogations by law enforcement officers' are subject to the Confrontation Clause." (Citations omitted.) *Id.* at 355. If a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony, it falls outside of the protection of the Confrontation Clause. *See id.* at 358, 369. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.* at 359.

**{¶26}** The Court reiterated: if the primary purpose of an interrogation is to respond to an ongoing emergency, then the purpose is not to create a record for trial and not within the scope of the Confrontation Clause. *Id.* at 358. "But there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Id.* "[W]hether an ongoing emergency exists is simply one factor" in determining the primary purpose of the interrogation. *Id.* at 366. The Court opined,

"standard rules of hearsay, designed to identify some statements as reliable, will be relevant." *Id.* at 358-359.

{¶27} The most accurate assessment of the primary purpose of an interrogation is ascertained through an objective analysis of the circumstances of the encounter and the statements and actions of the interrogators and those making the declaration. *Id.* at 360. The subjective or actual purpose of the participants is not the question. *Id.* Rather, the question is what purpose would have been possessed by reasonable participants, as determined from the totality of the circumstances. *Id.* Some relevant considerations in determining the primary purpose of the interrogation include: the informality of the encounter with the declarant (at or near the scene versus at a police station); the nature of what was asked/answered; the actions of the parties; the disorganization of the scene; the severity of the victim's injuries; the use of a gun; the absence of an identification of the suspect; the danger to the public; the danger to the victim; and the presence of an on-going emergency. *See id.* at 360, 364-367.

{¶28} Statements can start out non-testimonial (falling outside of the Confrontation Clause) and evolve into testimonial statements (protected by the Confrontation Clause). *Id.* at 365 (stating the trial court should determine this transition point in the first instance). The dual responsibilities of the responding officer were recognized: first responder and criminal investigator. *Id.* at 366. Finally, it should be noted the *Bryant* Court mentioned how the case of a gunshot victim found in a public place with an unidentified shooter running at large presented "a new context" differed from the case of a domestic abuse victim where there is a "narrower zone of potential victims than cases involving threats to public safety." *Id.* at 359, 363.

{¶29} Recently, the United States Supreme Court reversed the Ohio Supreme Court's exclusion of evidence under the Confrontation Clause where a three-year-old told his preschool teachers his mother's boyfriend caused his injuries. The Court was presented with the issue of whether statements to persons other than law enforcement officers are subject to the Confrontation Clause. *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2181, 192 L.Ed.2d 306 (2015). The Court declined to

categorically exclude statements to non-law enforcement from the Confrontation Clause's protection. *Id.* In setting forth the basic law, the Court reiterated: "under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Id.* at 2180. (if no such primary purpose exists, admissibility is left to the rules of evidence). The Court then added:

> But that does not mean that the Confrontation Clause bars every statement that satisfies the "primary purpose" test. We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause. (Citations omitted.)

*Id.* at 2180-2181. The Court also stated: "Neither *Crawford* nor any of the cases that it has produced has mounted evidence that the adoption of the Confrontation Clause was understood to require the exclusion of evidence that was regularly admitted in criminal cases at the time of the founding." *Id.* at 2182.

{¶30} In writing a separate concurrence, Justice Scalia (joined by Justice Ginsberg) agreed with employing the usual test applicable to informal police interrogations and the result in the case. *Id.* at 2183-2184 (Scalia, J., concurring). Justice Scalia then expressed: "I write separately, however, to protest the Court's shoveling of fresh dirt upon the Sixth Amendment right of confrontation so recently rescued from the grave in *Crawford* * * *." *Id.* at 2184. He said a statement by the six-justice-majority (that the primary purpose test is merely one "necessary, but not always sufficient" condition for the Confrontation Clause's protections to apply) was "absolutely false, and has no support in our opinions." *Id.* at 2184-2185. He saw this "aggressive hostility to precedent" as dicta. *Id.* at 2185. We note Justice Thomas wrote his own concurrence to express his standard view that the Confrontation Clause only protects statements bearing "sufficient indicia of solemnity to qualify as testimonial." *Id.* at 2186 (Thomas, J., concurring) (focusing on "formalized" statements).

**{¶31}** Appellant contends the victim's statements to the police officer were testimonial, claiming there was no immediate threat to the victim and no emergency in progress. Appellant says he and the victim were located in separate physical spaces when police arrived at the store. He concludes the primary purpose of the interrogation was to prove past events relevant to a later prosecution, alleging the officer was ascertaining "what happened?" as opposed to "what is happening?"

**{¶32}** The state asserts the primary purpose of the investigation was not to obtain testimony but to respond to an emergency call about a fight at a store. The state notes the presence of an ongoing emergency is not the sole test and asks us to consider the entirety of the circumstances, including the victim's state of mind and the lack of formal interrogation on arrival.

**{¶33}** The officer was responding to an emergency call reporting a fight at a store on the East Side of Youngstown. He entered the store and heard the victim who was using a loud voice. She was "very irate" and "very upset." The officer noted, "she wouldn't really calm down for me so it was difficult to get the story from her." (Tr. 10). The trial court ruled the standard for admitting an excited utterance was established.

**{¶34}** Even if not dispositive, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant." *Bryant*, 562 U.S. at 358-359. We also note: "The excited utterance exception, which is at least two centuries old and may in fact have its origins in late 17th century English common law, is without question a firmly rooted hearsay exception." *United States v. Hadley*, 431 F.3d 484 (6th Cir.2005). Although Justice Scalia characterized it as dicta, the *Clark* majority did recently observe: "the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding." *Clark*, 135 S.Ct. at 2180.

**{¶35}** In any event, the officer could not be certain there was no ongoing emergency, threat to the victim, or threat to others at the store. Objectively, the victim could still be seen as in danger. In order to assess the situation, the officer tried to listen to the victim and then elicited clarification while calming down the victim. The incident did not occur at a private home. The officer did not know who

the perpetrator was when he first responded. Nor did he initially know where the perpetrator was located. The "circumstances were not entirely clear." *See Clark*, 135 S.Ct. at 2181.

{¶36} Objectively, the officer's role as first responder could still be seen as his primary function. We also note, as the officer brought the victim outside of the store, a car (occupied by Appellant) pulled up to the front of the store; the officer testified, "I don't know where they came from." (Tr. 12). The victim completed a domestic violence form after she made statements to the officer. The form was not admitted as evidence. The officer testified to what the victim verbally told him, when the scene was disorganized and the questioning lacked formality.

{¶37} Under the totality of the circumstances, a reasonable person could conclude the *primary* purpose of the informal questioning by the first-responding police officer and the responsive excited utterances of the victim were not to prove past events for a subsequent criminal prosecution, i.e., the primary purpose was not to create an out-of-court substitute for testimony. This court concludes the testimony was not presented in violation of the Confrontation Clause. In accordance, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: WEIGHT OF THE EVIDENCE</u>

{¶38} Appellant's second assignment of error provides:

"APPELLANT'S DOMESTIC VIOLENCE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶39} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It depends on the effect in inducing belief and relates to persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, 19. In evaluating a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that a new trial must be

ordered. *Thompkins*, 78 Ohio St.3d at 387. A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.*

**{¶40}** We are guided by the principle that the fact-finder is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it. *See, e.g., State v. Hill,* 75 Ohio St.3d 195, 661 N.E.2d 1068 (1996); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994). We generally proceed under the theory that when there are two conflicting versions of events, neither of which is unbelievable, we refrain from choosing which version we believe is most credible. *See State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶41}** In support of his weight of the evidence argument, Appellant points to the birth certificate of the victim's child and notes there was no father listed. Appellant offered the child's birth certificate as an exhibit at trial. As the state pointed out to the trial court, the child was given Appellant's last name. (The first name is also similar to that of Appellant.) Regardless, the victim told the officer Appellant was the father of her child. (Tr. 15).

**{¶42}** Appellant also criticizes the officer's failure to include in his report the alleged red mark on the victim's chest. The victim said Appellant struck her in the chest, knocking her to the ground. The officer testified he observed a red mark in the victim's chest area. (Tr. 11). The officer attributed the redness to a physical altercation but admitted he could not say the redness was due to an attack by any person. (Tr. 19).

**{¶43}** Defense counsel asked why the officer left the observation of redness out of his report. The officer responded, "I don't know." (Tr. 16). He was asked: "Is there a chance that there wasn't any redness because if there was it would have been in the report?" The officer replied, "Could have been, I am not sure what you mean." (Tr. 17). Counsel added, "So what I am asking you is the absence of that notation, the absence of some type of description in the report, does that mean that perhaps your memory is confused today and the report is more accurate, there was no redness as opposed to you sitting here today saying there was?" The officer replied, "Could be." (Tr. 18).

{¶44} On redirect, the officer explained he did not mention the redness in his report because "I didn't find it very serious to begin with." (Tr. 18-19). The state inquired, "So in essence, you saw just a little redness and didn't think it was, didn't think much of it?" The officer answered, "Correct." The officer then reaffirmed his testimony that he recalled seeing the redness on the victim's chest. (Tr. 19).

{¶45} The officer's statement that he observed redness on the victim's chest area could be reasonably believed by the fact-finder. The officer's demeanor, voice inflections, eye movements, and gestures could have contributed to the trial court's weighing of his testimony on this topic and as a whole. He recounted the victim's excited utterances made to him as he responded to an emergency call. The trial court did not clearly lose its way in believing the officer's testimony and weighing the evidence. In accordance, this assignment of error is overruled.

{¶46} For the foregoing reasons, the trial court's judgment is affirmed.


Donofrio, J., concurs.

Waite, J., concurs.