[Cite as *Cleveland v. Wiley*, 2019-Ohio-2324.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | No. 107437 |
| v. | : | |
| DEANDREY P. WILEY, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

Criminal Appeal from the Cleveland Municipal Court
Case No. 2017 CRB 022395

***Appearances:***

Barbara A. Langhenry, Cleveland Director of Law, Karrie Howard, Chief Prosecutor, and Verlinda L. Powell, Assistant City Prosecutor, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1}  Defendant-appellant, Deandrey P. Wiley, appeals from his conviction for domestic violence.  He assigns the following errors for our review:

I.  [Wiley's] conviction was obtained on insufficient evidence.

II.  [Wiley's] conviction was against the manifest weight of the evidence.

III.  Trial counsel rendered constitutionally ineffective assistance of counsel when he failed to impeach the alleged victim [with her prior inconsistent statement and the police body camera evidence].

{¶ 2}  Having reviewed the record and pertinent law, we affirm.  The apposite facts follow.

{¶ 3}  On October 2017, Wiley was charged with domestic violence in violation of R.C. 2919.25, following a confrontation with D.T., the mother of his eight-year-old child.

{¶ 4}  D.T. testified that she and Wiley lived together until 2012.  On October 7, 2017, Wiley telephoned D.T. to ask about taking their child for an overnight visit.  D.T. refused to allow the overnight visit because Wiley would not provide her with his address, and D.T. believed that Wiley's current girlfriend "has an issue with her."  A short time later, Wiley and his girlfriend drove to D.T.'s home to get the child while D.T. was not there.  Wiley telephoned D.T., and she stated that Wiley could not take the child and that they would discuss the matter when she returned home.

{¶ 5}  While en route home, D.T., who was a passenger in her friend Aisha Baylor's ("Baylor") car, spotted Wiley driving away with the child.  Both drivers stopped their vehicles, and D.T. removed the child from Wiley's car.  According to D.T., Wiley got out of the car and said, "I should beat your ass."  He was "in [her] face," shook her, and "bumped [her] up against the car."  He then attempted to

remove the child from Baylor's car, and banged on the car after Baylor locked the doors. Baylor drove off with the child, and D.T. called the police. At that point according to D.T., Wiley pushed her. She "remember[s] her hands touching the ground."

{¶ 6} On cross-examination, D.T. admitted that in her statement to police after the incident, she did not indicate that Wiley had pushed her to the ground, or that he had bumped her up against the car. She also told officers who responded to her home later that day that Wiley had scratched her and given her bruises, but this was not included in her written statement.

{¶ 7} Baylor testified that she stood between Wiley and D.T. as they argued outside her car, but Wiley pushed her away. As Baylor drove away with the child, she observed Wiley slap D.T. and push her to the ground. On cross-examination, Baylor acknowledged that D.T. never reported being slapped.

{¶ 8} Proceeding to the defense, Wiley testified that he waited over an hour for D.T. to return home, so he took the child to the park in order to pass the time. While en route back to D.T.'s home, he observed D.T. in Baylor's car travelling behind him. When he stopped at a light on East 103rd Street, D.T. suddenly jumped out of Baylor's car and ran toward him. Wiley pulled over to talk to her, and she abruptly removed the child from his car. Wiley testified that he and D.T. were involved in a verbal altercation, but he denied pushing, striking, or threatening her. However, he acknowledged that he was convicted of domestic violence in 2012 in connection with a separate incident involving D.T.

{¶ 9}  Wiley's girlfriend, Tamia Johnson ("Johnson"), testified that Wiley and D.T. shouted at each other, but Wiley did not put his hands on D.T. during the incident.

{¶ 10} The defense next moved to submit police body camera video as evidence of D.T.'s interaction with the police at her home after the incident, and to refute her claim that she sustained bruises and scratches.  The court denied the motion because there had been no testimony from the officer who was wearing the body camera and no prior evidence referring to such video evidence.  However, the court stated that it would entertain further briefs on the issue.

{¶ 11}  The court subsequently convicted Wiley of domestic violence.  The court imposed a no-contact order and sentenced him to 180 days in jail, with 165 days suspended, $1,000 fine with $800 suspended, and three years of community control sanctions.

### Sufficiency of the Evidence of Domestic Violence

{¶ 12}  In the first assigned error, Wiley argues that the city's evidence that he shook and pushed D.T. during a verbal altercation is insufficient to establish domestic violence.  In opposition, the prosecuting attorney asserts that the evidence is sufficient because Wiley threatened D.T., grabbed her, shook her, pushed her against Baylor's car, and pushed her to the ground.

{¶ 13}  On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.  *State v. Thompkins*, 78 Ohio St.3d

380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 17, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} As is relevant herein, R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). An offender does not have to cause a tangible injury to his victim in order to be convicted of domestic violence in violation of R.C. 2919.25(A). *Cleveland v. Mincy*, 8th Dist. Cuyahoga No. 106224, 2018-Ohio-3565, ¶ 18; *Strongsville v. Beall*, 8th Dist. Cuyahoga No. 103051, 2016-Ohio-1222, ¶ 7. R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member. *State v. Nielsen*, 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990) (grabbing the victim and throwing her to the floor was sufficient to establish the offense).

{¶ 15} Wiley relies upon *State v. Dotson*, 7th Dist. Columbiana No. 05 CO 28, 2006-Ohio-1093, for the proposition that pushing is insufficient to establish

domestic violence. In *Dotson,* the state presented the testimony of the investigating officer, who did not witness the offense, but instead recited the victim's allegations from her written statement. In the written statement, the victim reported that Dotson pushed her, dragged her out of the house, and threatened the children. The court of appeals concluded that the conviction was not supported by sufficient evidence because there was no evidence that the defendant caused or attempted to cause physical harm. *Id.* at ¶ 13. The court held that "pushing or pulling a person, without evidence of anything more, is simply not enough to justify a conviction for domestic violence[.]" *Id.* Similarly, in *Cleveland v. Calhoun*, 8th Dist. Cuyahoga No. 105520, 2018-Ohio- 1758, this court found insufficient evidence to support a conviction for domestic violence where the defendant simply pushed the victim out of the way, "there was no evidence that he pushed her down," and the victim testified that she was not harmed. *Id.* at ¶ 10-11.

{¶ 16} However, sufficient evidence to support a domestic violence conviction has been established where the defendant pushed a victim to the ground. *See Nielsen*; *Cleveland Hts. v. Kleinhenz*, 8th Dist. Cuyahoga No. 101618, 2015-Ohio-1540, ¶ 14-15; *State v. Young*, 8th Dist. Cuyahoga No. 91007, 2008-Ohio-6158, ¶ 25; *State v. Wolfe*, 5th Dist. Tuscarawas No. 2015 AP 0012, 2015-Ohio-3455, ¶ 17; *State v. Grabe*, 7th Dist. Mahoning No. 16 MA 0061, 2017-Ohio-1017, ¶ 11-12; *State v. Williams*, 2nd Dist. Clark No. 2015-CA-113, 2016-Ohio-5356, ¶ 13. Similarly, in *Beall*, sufficient evidence was presented where the defendant tackled the victim to the ground. *Id.*, 8th Dist. Cuyahoga No. 103051, 2016-Ohio-1222, ¶ 7.

{¶ 17} In this matter, the evidence demonstrates that Wiley said that he should "beat" D.T., and he grabbed and shook her. He then pushed her into the car and pushed her to the ground. This constitutes sufficient evidence from which a rational trier of fact could find the offense of domestic violence.

{¶ 18} The first assigned error lacks merit.

## Manifest Weight of the Evidence

{¶ 19} In the second assigned error, Wiley asserts that his conviction for domestic violence is against the manifest weight of the evidence. He maintains that the victim provided multiple versions of the events that occurred outside Baylor's car, and Baylor's testimony that Wiley slapped D.T. was inconsistent with D.T.'s own testimony.

{¶ 20} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541.

{¶ 21} An appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio

App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 22} After reviewing the record in this matter, weighing the evidence, considering the credibility of witnesses, and resolving conflicts in the evidence, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice in convicting Wiley of domestic violence. The record clearly demonstrates that more than a simple verbal altercation occurred, and that Wiley grabbed and pushed D.T. before pushing her to the ground. The conviction is not against the manifest weight of the evidence.

{¶ 23} The second assigned error lacks merit.

## Ineffective Assistance of Counsel

{¶ 24} Wiley next claims that his trial attorney was ineffective for failing to impeach D.T. with her prior inconsistent statement and the police body camera evidence.

{¶ 25} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were serious enough to deprive the defendant a fair trial, a trial whose result is reliable. *Id.*

{¶ 26} With regard to Wiley's claim that his trial attorney was ineffective in connection with his cross-examination of the victim, we note that his counsel thoroughly cross-examined D.T. about all of her statements in this matter and all omissions and contradictions. Therefore, this argument is not supported in the record.

{¶ 27} With regard to Wiley's claim that his attorney was ineffective for failing to cross-examine the victim with information from the body camera video, we note that this evidence is not in evidence. However, police arrived after the confrontation, and based upon our review of the transcript, Wiley's counsel effectively cross-examined the city's witnesses. Accordingly, we cannot say that Wiley's trial attorney was ineffective for failing to use the body camera video in this case.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR