[Cite as *State v. Delancey*, 2022-Ohio-2842.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROGER L. DELANCEY, JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 NO 0483**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 221-2033

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Jordan C. Croucher*, Noble County Prosecuting Attorney, 150 Courthouse, Caldwell, Ohio 43724, for Plaintiff-Appellee and

*Atty. Clifford N. Sickler*, 508 North Street, Caldwell, Ohio 43724, for Defendant-Appellant.

Dated:
August 15, 2022

**Donofrio, P. J.**

{¶1}    Defendant-Appellant, Roger L. Delancey Jr., appeals from a Noble County Common Pleas Court judgment convicting him of having weapons while under disability following a jury trial.

{¶2}    Jesse McKinney and Cody Lynn are agents for an insurance company that solicits business through the mail.  If someone receives information from the company in the mail, they can fill out a card and send it back to request additional information.  Once the potential client sends the card back, the insurance company places them on a "lead list."  Agents are then assigned to visit the homes of the potential clients on the lead list to provide them information and to sell them life insurance.

{¶3}    On March 15, 2021, McKinney and Lynn were assigned to follow up with a potential client from their lead list.  Appellant's wife, Cheri, had returned a card requesting insurance information.  As a result of Cheri's expressed interest, McKinney and Lynn went to appellant's and Cheri's house and knocked on the door.  They heard yelling coming from the house and were able to hear someone yell, "You came to the wrong f***ing house today."  They then heard the window open and saw appellant pointing the barrel of a rifle at them through the screen in the window.  The two men identified themselves as insurance agents and explained why they were there.  After an exchange of words, appellant allowed the two to leave.

{¶4}    On April 14, 2021, a Noble County Grand Jury indicted appellant on two counts of kidnapping, first-degree felonies in violation of R.C. 2905.01(A)(3), and one count of having weapons while under a disability, a third-degree felony in violation of R.C. 2923.13.  Appellant pleaded not guilty.

{¶5}    The matter proceeded to a jury trial.  The jury found appellant not guilty of the kidnapping counts but guilty of having weapons while under a disability.  The trial court subsequently held a sentencing hearing.  It sentenced appellant to 24 months in prison.

{¶6}    Appellant filed a timely notice of appeal on September 17, 2021.  He now raises four assignments of error.

{¶7}    Appellant's first assignment of error states:

DEFENSE COUNSEL COMMITTED REVERSIBLE ERROR WHEN HE FAILED TO OBJECT TO HEARSAY TESTIFIED TO BY LAW ENFORCEMENT OFFICER ON BEHALF OF THE STATE.

{¶8}    Appellant argues that his counsel was ineffective for failing to object to hearsay testimony by Lieutenant Brent McKee.  But he admits that counsel's failure to object is generally a trial strategy.  Appellant asserts counsel should have objected to Lt. McKee's testimony regarding a report prepared by Deputy Leanne Fogel that included written statements by the victims.  He also asserts counsel should have objected to the video interviews of the victims, which were played for the jury.

{¶9}    To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test.  First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.  Second, appellant must demonstrate that he was prejudiced by counsel's performance.  *Id*.  To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

{¶10}    Appellant bears the burden of proof on the issue of counsel's ineffectiveness.  *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).  In Ohio, a licensed attorney is presumed competent.  *Id*.

{¶11}    On direct examination, the prosecutor asked Lt. McKee how he became involved in the case.  (Tr. 80).  The lieutenant testified that Deputy Fogel brought the case to his attention and provided him with her written report.  (Tr. 81-82; Ex. B).  He did not testify as to the specific contents of the report.  Lt. McKee further testified that he then conducted interviews of the victims, which he recorded.  (Tr. 82; Ex. C).  The prosecutor played a video of the interviews for the jury.  (Tr. 85).

{¶12}    As plaintiff-appellee, the State of Ohio, points out, not only did defense counsel not object to the recorded interviews being played for the jury, he requested this:

THE COURT: The victims are here to testify.

MR. CROUCHER [the prosecutor]: Correct. Actually if you prefer --

THE COURT: You were going to allow?

MR. CROSS [defense counsel]: I want the interview played.

* * *

THE COURT: Yeah but it's hearsay in and of itself.

MR. CROSS: They're interviews recorded by the detective in his course (inaudible). They're absolutely allowed to play.

MR. CROUCHER: And again I believe the defense would intend to play it regardless.

MR. CROSS: Yes.

THE COURT: As long as there's no objection.

MR. CROSS: No, there's no objection whatsoever. Yeah, Crawford -- we're good, that's confrontation clause.

(Tr. 83-84).

{¶13} This conversation among the prosecutor, defense counsel, and the court makes clear that defense counsel wanted the video played. The court even pointed out that the video was hearsay. Nonetheless, defense counsel and the prosecutor agreed that they both wanted the court to play the video for the jury.

{¶14} Any error here would be an invited error. Invited error is a well-settled principle under which "[a] party will not be permitted to take advantage of an error which he himself invited or induced." *State v. Kovac*, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 45 (2d Dist.) quoting *State v. Bey* (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484. In addressing an invited error and trial strategy, the Eighth District has held:

> [W]e recognize that considering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error. In any event, an invited error involves the exercise of trial strategy, and the courts have repeatedly held that an appellate court will not question matters of trial strategy. See *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932, 1998-Ohio-370.

*State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 9.

{¶15} In this case, playing the video of the interviews was part of defense counsel's trial strategy. An appellate court will not second-guess what could be considered to be a matter of trial strategy such as decisions about the use of objections. *State v. Brady*, 8th Dist. Cuyahoga No. 92510, 2010-Ohio-242, ¶ 34. Defense counsel perhaps believed that listening to the victims' accounts of what happened would demonstrate that appellant did not commit kidnapping as charged. And considering that the jury found appellant not guilty of both kidnapping charges, it proved to be an effective trial strategy.

{¶16} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶17} Appellant's second assignment of error states:

MANIFEST WEIGHT OF EVIDENCE WAS NOT SUFFICIENT FOR A CONVICTION BEYOND A REASONABLE DOUBT.

{¶18} Appellant asserts here that his conviction was against the manifest weight of the evidence. He states the victims identified the weapon at issue as a "bolt action" when instead it was actually a "single action." He claims that because the firearm was misidentified, the evidence did not show that the weapon he possessed was operational, which is an element of the offense. Additionally, appellant argues that he and his wife were frightened and entitled to protect their home.

{¶19}  In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶20}  Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. Belmont No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99-CA-149, 2002-Ohio-1152.

{¶21}  In order to reverse a jury verdict as against the manifest weight of the evidence, all three appellate judges must concur. *Thompkins*, 78 Ohio St.3d at 389.

{¶22}  The jury convicted appellant of having weapons while under a disability in violation of R.C. 2923.13, which provides:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

> * * *

Case No. 21 NO 0483

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

**{¶23}** We must examine the evidence presented at trial pertaining to the having weapons while under a disability charge to determine if the jury's verdict is supported by the manifest weight of the evidence.

**{¶24}** Karen Starr, the Deputy Registrar for the Noble County Clerk of Courts, testified first. She identified the judgment entry from appellant's prior felony conviction. (Tr. 74-75; Ex. A). The judgment entry stated that appellant was convicted of illegal cultivation of marijuana, a third-degree felony. (Tr. 75-76; Ex. A).

**{¶25}** Lieutenant Brent McKee, the Noble County Sheriff's Office Investigations Commander, testified next. Lt. McKee testified that after interviewing the victims, he obtained a search warrant for appellant's house. (Tr. 86). Lt. McKee stated that appellant was arrested and the search warrant was executed. (Tr. 90-91). He stated he seized an H&R 223 caliber firearm, some ammunition, and a muzzle-load rifle. (Tr. 95, 98). Lt. McKee stated that he retrieved the 223 firearm from a gun safe in the house. (Tr. 100). Inside the safe, he also located appellant's driver's license and wallet. (Tr. 100). Lt. McKee testified that it would be difficult to determine the caliber of a firearm in the range of 22 to 45 because they are very similar. (Tr. 98). The lieutenant test-fired the firearm and found it to be operable. (Tr. 109-110).

**{¶26}** On cross-examination, Lt. McKee testified that both of the victims identified the firearm appellant had as "bolt action," but the firearm he seized from appellant's house was actually a "single action." (Tr. 118). He further admitted that both men "guessed" that the firearm was a 4570 caliber when in fact it was a 223 caliber. (Tr. 120-121). The lieutenant also testified that he found a Facebook photograph of appellant holding the firearm that he seized from the safe. (Tr. 122).

**{¶27}** Lt. McKee further testified that he ran a search of appellant's criminal history and learned that he had a felony drug conviction for cultivating marijuana. (Tr. 108).

**{¶28}** Jesse McKinney was the next witness. McKinney testified that after he knocked on appellant's door, he heard yelling from inside. (Tr. 143). He then heard the

window "drop open" and saw appellant pointing the barrel of a firearm at him. (Tr. 143). McKinney acknowledged that in his interview, he identified the firearm as "like a CBA 4570" with a bolt action, like the type used for hunting. (Tr. 144). McKinney stated he would be able to identify the firearm that appellant pointed at him. (Tr. 144). He then identified State's Exhibit E, which was the firearm seized from appellant's home. (Tr. 144). McKinney admitted this was not a bolt action firearm but that he could have been mistaken because he was looking at it through a window screen and was feeling threatened. (Tr. 145-146).

{¶29} Cody Lynn testified next. Lynn testified that after knocking on the door at appellant's house, the window moved and he saw the barrel and scope of a firearm pointed at them. (Tr. 173). Lynn stated that he would be able to identify the barrel and scope of the firearm that he saw. (Tr. 173-174). Upon viewing State's Ex. E, Lynn stated that he believed that it had the same scope that he saw through appellant's window. (Tr. 174). He also testified that he could have been mistaken when he said in his interview that he also noticed a silver receiver on the firearm. (Tr. 174).

{¶30} Appellant's wife, Cheri Delancey, was the only witness for the defense. Delancey acknowledged that appellant did have a gun at some point during the incident. (Tr. 207). She testified that when McKinney and Lynn were knocking on the door, appellant had his gun for a "[c]ouple seconds and then he put it down." (Tr. 207). She stated that she had left the gun outside of the safe. (Tr. 208).

{¶31} Given this evidence, we cannot conclude that the jury clearly lost its way in finding appellant guilty of having weapons while under a disability. The evidence was undisputed that appellant had a third-degree felony conviction for cultivation of marijuana. It was also undisputed that appellant pointed a firearm at McKinney and Lynn. There was some inconsistency regarding McKinney's and Lynn's identification of the particular type of firearm. But there was no dispute that appellant pointed a firearm at the two men. And a firearm was found in the safe in appellant's house along with his driver's license and wallet. Thus, the jury's verdict is not against the manifest weight of the evidence.

{¶32} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶33} Appellant's third assignment of error states:

THE DEFENDANT'S RIGHT TO CONFRONTATION OF HIS ACCUSERS UNDER THE 6TH AMENDMENT WAS VIOLATED WHEN THE RECORDED INTERVIEW OF THE WITNESSES WAS PLAYED BEFORE THE JURY WITHOUT THE BENEFIT OF CROSS-EXAMINATION AFFORDED BY CRAWFORD V. WASHINGTON STANDARDS.

{¶34} In this assignment of error, appellant argues that his right to confront his accusers was violated when the court allowed the state to play a video of the interviews given by the victims.

{¶35} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness (unless that witness is unavailable to testify and the defendant had a prior opportunity for cross examination). *State v. Grabe*, 7th Dist. Mahoning No. 16 MA 0061, 2017-Ohio-1017, ¶ 20 citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶36} In this case, as noted above, McKinney's and Lynn's video interviews were played for the jury at the request of the prosecutor and defense counsel. The purpose of the Confrontation Clause is to ensure that a criminal defendant has the opportunity to confront his accusers. In this case, appellant did have that opportunity. McKinney and Lynn both testified at trial. And defense counsel cross-examined both of them. Thus, appellant's confrontation rights were not violated in any way.

{¶37} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶38} Appellant's fourth assignment of error states:

THE COURT ERRED IN PERMITTING THE WEAPONS UNDER DISABILITY CHARGE TO REMAIN WITHOUT SHOWING THAT DEFENDANT UNDERSTOOD HE HAD A LIFETIME WEAPONS DISABILITY BAN.

**{¶39}** Appellant claims that he was never informed in his prior case in 2005 that he would be subject to a lifetime weapons disability.

**{¶40}** Pursuant to R.C. 2923.13(A)(3), in order to convict appellant of having weapons under a disability, the state had to prove that appellant (1) knowingly acquired, had, carried, or used a firearm and that appellant (2) was under indictment for or was convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. It is not an element of the offense for the state to prove that appellant was informed of his weapons disability in a prior case.

**{¶41}** Moreover, as the state points out, appellant never filed an appeal from his prior case, which would have been the proper place to argue that he was not advised of the disability. And even then, the trial court would only have had to substantially comply with issuing an advisement to appellant regarding the fact that the offense he was pleading guilty to carried a lifetime weapons disability with it. *State v. Johnson*, 7th Dist. Columbiana No. 18 CO 0030, 2019-Ohio-4541, ¶¶ 23, 25.

**{¶42}** Accordingly, appellant's fourth assignment of error is without merit and is overruled.

**{¶43}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J. concurs.

D'Apolito, J. concurs.

Case No. 21 NO 0483

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to rule 27 of the Rules o Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**